NO. 16-1262

# United States Court of Appeals

*for the*

# Fourth Circuit

UNITED STATES EX REL. BENJAMIN CARTER,

*Plaintiff-Appellant,*

– v. –

HALLIBURTON CO.; KELLOGG BROWN & ROOT SERVICES, INC.;
SERVICE EMPLOYEES INTERNATIONAL INC.; KBR, INC.,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA IN CASE NO. 1:11-CV-00602
THE HONORABLE JAMES C. CACHERIS, SENIOR U.S. DISTRICT COURT JUDGE

## BRIEF ON BEHALF OF PLAINTIFF-APPELLANT
## UNITED STATES EX REL. BENJAMIN CARTER

DAVID LUDWIG, ESQ.
DUNLAP, BENNETT & LUDWIG, PLLC
211 Church Street, SE
Leesburg, Virginia 20175
(703) 777-7319

DAVID S. STONE, ESQ.
ROBERT A. MAGNANINI, ESQ.
STONE & MAGNANINI LLP
100 Connell Drive, Suite 2200
Berkeley Heights, New Jersey 07922
(973) 218-1111

*Attorneys for Plaintiff-Appellant*
*United States ex rel. Benjamin Carter*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ iii

JURISDICTIONAL STATEMENT ............................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................2

STATEMENT OF THE CASE...................................................................3

SUMMARY OF ARGUMENT ................................................................10

ARGUMENT ...........................................................................................13

I.    THE DISTRICT COURT ERRED IN GRANTING DEFENDANTS'
      MOTION TO DISMISS UNDER THE FIRST-TO-FILE BAR ......................13

      A.  THE DISTRICT COURT'S DISMISSAL UNDER THE FIRST-TO-
          FILE BAR FUNDAMENTALLY CONFLICTS WITH THE SUPERME
          COURT'S HOLDING IN THIS CASE ......................................................14

          1.  THE SUPREME COURT HELD THAT EARLIER *QUI TAM*
              SUITS ARE NO LONGER "PENDING" UPON DISMISSAL ..........15

          2.  THE SUPREME COURT HELD THAT CONGRESS WOULD
              WANT MERITORIOUS WHISTLEBLOWER CLAIMS TO
              PROCEED ........................................................................................18

          3.  THE SUPREME COURT HELD THAT PLAINTIFF HAD AT
              LEAST ONE LIVE CLAIM IN THE CONTEXT OF THE FIRST-
              TO-FILE BAR...................................................................................21

      B.  THIS COURT SHOULD ADOPT THE SOUND REASONING OF ITS
          TWO SISTER DISTRICT COURTS WHICH HAVE HELD THAT
          POST-FILING EVENTS PROPERLY TRIGGER REASSESSMENT
          OF THE FIRST-TO-FILE BAR BY OPERATION OF LAW SUCH
          THAT RELATORS NEED NOT REFILE THEIR CLAIMS
          FOLLOWING THE DISMISSAL OF AN EARLIER FILED ACTION ...23

1. AMENDING A COMPLAINT ALLOWS COURTS TO CONTEMPORANEOUSLY REASSESS THE FIRST-FILE-BAR'S APPLICATION .......................................................24

2. THE DISTRICT COURT'S DECISION CONFLICTS WITH TWO SISTER COURTS AND THE FCA'S POLICY .................................28

II. THE DISTRICT COURT ERRED BY FAILING TO GRANT PLAINTIFF'S MOTION FOR RECONSIDERATION ...................................30

A. THE DISTRICT COURT COMPOUNDED ITS EARLIER ERRORS BY IGNORING PERSUASIVE AUTHORITY FROM THE FIRST CIRCUIT .......................................................31

B. OTHER DISTRICT COURTS HAVE ENDORSED THE FOURTH CIRCUIT AND THE FIRST CIRCUIT'S APPLICATION OF THE FIRST-TO-FILE BAR ...........................................35

III. THE DISTRICT COURT'S DISMISSAL ON FIRST-TO-FILE GROUNDS AND REQUIREMENT THAT PLAINTIFF REFILE HIS COMPLAINT A FIFTH TIME VIOLATE SOUND PUBLIC POLICY AND PRESENT UNNECESSARY PROCEDURAL HURDLES..................37

A. REQUIRING PLAINTIFF TO REFILE HIS COMPLAINT WOULD REQUIRE UNNECESSARY STEPS, INCLUDING THE RESEALING OF THE COMPLAINT AND A NEW GOVERNMENT INVESTIGATION ...........................................37

B. PLAINTIFF'S CASE PRESENTS MORE PRESSING POLICY CONCERNS THAN SIMILAR ACTIONS BECAUSE A REFILING WOULD POTENTIALLY BE BARRED UNDER THE STATUTE OF LIMITATIONS ...........................................40

CONCLUSION ...........................................................42

CERTIFICATE OF COMPLIANCE...........................................43

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Benjamin Carter v. Halliburton Company, et al.,*
  E.D. Va., Civ. No. 10-cv-0864 .........................................................................5

*Benjamin Carter v. Halliburton Company, et al.,*
  E.D. Va., Civ. No. 13-cv-1188 .................................................................. 6-7

*Browder v. Department of Corrections,*
  434 U.S. 257 (1978)...........................................................................................31

*Campbell-Ewald Co. v. Gomez,*
  136 S. Ct. 663 (2016), *as revised* (Feb. 9, 2016)...........................................22

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983)..............................................................................................22

*De Osorio v. U.S. I.N.S.,*
  10 F.3d 1034 (4th Cir. 1993) ..........................................................................19

*Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson,*
  559 U.S. 280 (2010)............................................................................................19

*Grynberg v. Koch Gateway Pipeline Co.,*
  390 F.3d 1276 (10th Cir. 2004) ......................................................................25

*Harrison v. Westinghouse Savannah River Co.,*
  176 F.3d 776 (4th Cir. 1999) ................................................................19, 41

*In re Nat. Gas Royalties Qui Tam Litig.,*
  566 F.3d 956 (10th Cir. 2009) ........................................................................25

*Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter,*
  135 S. Ct. 1970 (2015).............................................................................*passim*

*Kurnik v. PharMerica Corp.,*
  No. 3:11-CV-01464-JFA, 2015 WL 1524402
  (D.S.C. Apr. 2, 2015).............................................................................*passim*

*McCorkle v. Bank of Am. Corp.,*
  688 F.3d 164 (4th Cir. 2012) ..........................................................................14

*Rockwell International Corp. v. United States,*
  549 U.S. 457 (2007)............................................................................................26

*U.S. ex rel. Beauchamp v. Academi Training Ctr.*,
    816 F.3d 37 (4th Cir. 2016) ..........................................................................19

*U.S. ex rel. Bunk v. Gosselin World Wide Moving, N.V.*,
    741 F.3d 390 (4th Cir. 2013) ......................................................................38

*U.S. ex rel. Carter v. Halliburton Co.*,
    144 F. Supp. 3d 869 (E.D. Va. 2015) ...................................................8, 15, 18

*U.S. ex rel. Carter v. Halliburton Co.*,
    612 F. App'x 180 (4th Cir. 2015) ..............................................................7, 22

*U.S. ex rel. Carter v. Halliburton Co.*,
    710 F.3d 171 (4th Cir. 2013) ..............................................................6, 18, 21

*U.S. ex rel. Gadbois v. PharMerica Corp.*,
    809 F.3d 1 (1st Cir. 2015), *cert. denied*, No. 15-1309,
    2016 WL 1643545 (U.S. June 27, 2016)................................................*passim*

*U.S. ex rel. Heath v. AT & T, Inc.*,
    791 F.3d 112 (D.C. Cir. 2015), *cert. denied sub nom. AT&T, Inc. v.*
    *U.S. ex rel. Heath*, No. 15-363, 2016 WL 3461577 ( June 27, 2016)...........24

*U.S. ex rel. Palmieri v. Alpharma, Inc.*,
    928 F. Supp. 2d 840 (D. Md. 2013).......................................................*passim*

*United States ex rel. Carter v. Halliburton Co.*,
    No. 111-cv-602, 2016 WL 634656 (E.D. Va. Feb. 17, 2016)......................41

*United States ex rel. Carter v. Halliburton Co.*,
    No. 11–cv–602 (E.D. Va. filed June 2, 2011) ........................................*passim*

*United States ex rel. Gadbois v. PharMerica Corp.*,
    No. 10–471, slip op. at 22–23 (D.R.I. Oct. 3, 2014) ....................................32

*United States ex rel. Precision Co. v. Koch Indus., Inc.*,
    31 F.3d 1015 (10th Cir. 1994) ....................................................................25

*United States ex rel. Shea v. Verizon Commc'ns, Inc.*,
    No. CV 09-1050(GK), 2015 WL 7769624 (D.D.C. Oct. 6, 2015)...............27

*United States v. Cephalon, Inc.*,
    No. CV 08-287, 2016 WL 398014 (E.D. Pa. Feb. 2, 2016) ........36, 37, 40, 41

*United States v. Holland*,
    214 F.3d 523 (4th Cir. 2000) ......................................................................31

iv

*United States v. Kwai Fun Wong,*
    135 S. Ct. 1625 (2015)...........................................................................24

*United States v. Ron Pair Enterprises, Inc.,*
    489 U.S. 235 (1989)..............................................................................28

*United States v. Unisys Corp.,*
    No. 1:14-CV-1217, 2016 WL 1367163 (E.D. Va. Apr. 5, 2016).................33

*USA ex rel. Thorpe v. Halliburton Company, et al.,*
    C.D. Ca., Civ. No. 05-cv-8924 .......................................................5

**Statutes & Other Authorities:**

28 U.S.C. § 1291 ...............................................................................1

28 U.S.C. § 1331 ...............................................................................1

28 U.S.C. § 3732 ...............................................................................1

31 U.S.C. § 3729 ......................................................................*passim*

31 U.S.C. § 3730(b) ..........................................................................38

31 U.S.C. § 3730(b)(5)....................................................................2, 16

Fed. R. Civ. P. 12(b)(1)....................................................................14

Fed. R. Civ. P. 12(b)(6)....................................................................14

BLACK'S LAW DICTIONARY 215 (7th ed. 1999) ...................................16

Wil Granger, <u>KBR Report of Findings & Root Cause, Water Mission B4
    Ar Ramadi</u>, May 13, 2005 .............................................................4

## <u>JURISDICTIONAL STATEMENT</u>

On June 2, 2011, this case, *United States ex rel. Carter v. Halliburton Co.*, No. 11–cv–602 (E.D. Va. filed June 2, 2011) ("*Carter III*"), was filed under the False Claims Act, 31 U.S.C. § 3729, *et seq.* (the "FCA"). The United States District Court for the Eastern District of Virginia (the "District Court") possessed subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331. Venue was proper in the District Court under 28 U.S.C. § 3732, because, *inter alia*, at least one Defendant transacted business in the District. The District Court entered a final judgment on November 12, 2015, dismissing Plaintiff's Complaint. The District Court denied Plaintiff's subsequent motion for reconsideration on February 17, 2016.

On March 28, 2016, Plaintiff timely filed a Notice of Appeal of both decisions in the District Court. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Did the District Court err in holding that the 31 U.S.C. § 3730(b)(5) First-to-File Bar is assessed as of the date when the case was originally filed only, and cannot be reassessed if post-filing events "lift the bar," such as the dismissal of the formerly "pending" cases without reaching their merits?

2.      Did the District Court err in its interpretation and application of *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970 (2015) when, pursuant to the First-to-File Bar, it both dismissed Plaintiff's complaint and held that Plaintiff's motion to amend was futile?

3.      Did the District Court err in failing to apply persuasive case law from sister courts in the Fourth Circuit, which held that key post-filing events, such as a motion to amend the complaint, triggers contemporaneous reassessment of the First-to-File Bar?

4.      Did the District Court err in denying Plaintiff's motion to reconsider based upon intervening precedent in *U.S. ex rel. Gadbois v. PharMerica Corp*., 809 F.3d 1 (1st Cir. 2015), cert. denied, No. 15-1309, 2016 WL 1643545 (U.S. June 27, 2016), which supported the decisions of its sister courts and was consistent with the Supreme Court's decision in *Carter*, in holding that amendment of a complaint is permitted where an earlier-filed case has been dismissed?

## STATEMENT OF THE CASE

Over a decade ago, Plaintiff-Appellant Relator Benjamin Carter ("Plaintiff") was hired by Defendants Halliburton Company, Kellogg Brown & Root Services, Service Employees International, Inc., and KBR Inc. (collectively, "Defendants") to test and purify water provided to American troops stationed at Ar Ramadi and Al Asaad, Iraq.  JA23.  When he arrived in Iraq to begin work in January 2005, Plaintiff immediately discovered that his employment was a complete sham:  not only was water not being purified at the bases, there was no operable purification equipment available to perform the testing and purification he was hired to conduct.  JA33, 38.  Despite the fact that Plaintiff performed zero hours of purification work in Iraq, Defendants instructed him and others at the bases to complete timecards reporting twelve hours of purification work per day, often totaling eighty-four hours of purification work per week.  JA34 – 37.  To the extent employees did not report twelve hours of purification work, supervisors "corrected" those time cards to reflect a twelve-hour workday.  Defendants knowingly submitted these false timecards to the federal government for compensation, in express violation of the False Claims Act, and in complete disregard of the health risks imposed on American troops by their fraudulent scheme.  JA35 – 36.

Plaintiff internally reported Defendants' misconduct, including submitting a written report, but his complaints were rejected by his supervisors. JA39. Subsequent to leaving Defendants' employ and returning to the United States, Defendants received a quality control report prepared by their Theater Water Quality Manager, Wil Granger ("Granger"). Upon reviewing Defendants' work at Ar Ramadi and Al Asaad, Granger issued a report concluding that their failure to test or purify water

> **should be considered a 'NEAR MISS' as the consequences of these actions could have been VERY SEVERE resulting in mass sickness or death [of American troops].**

Wil Granger, <u>KBR Report of Findings & Root Cause, Water Mission B4 Ar Ramadi</u>, May 13, 2005, https://www.dpc.senate.gov/hearings/hearing30/kbr.pdf. (emphasis in original). After receiving Granger's report, Defendants nonetheless applied for and received approximately $56 million in performance bonuses from the Government for their purported water testing and purifying. JA359 – 364.

In January, 2006, Plaintiff obtained counsel upon returning to the United States and filed a *qui tam* action against Defendants on February 1, 2006 in the Central District of California, Civ. No. 06-cv-0616, which was transferred to the Eastern District of Virginia, Civ. No. 08-cv-1162 ("*Carter I*"), in an attempt to expose their fraudulent behavior and reckless mistreatment of American troops in a war zone.

4

In 2010, shortly before Plaintiff's claims were scheduled to begin trial, the Government for the first time advised that another complaint alleging time card fraud against Defendants had been filed under seal in California in December 2005 (*USA ex rel. Thorpe v. Halliburton Company, et al.,* C.D. Ca., Civ. No. 05-cv-8924, the "California Action"), mere weeks before Plaintiff's.  Finding that Plaintiff's claims were related to the California Action, the District Court thus dismissed *Carter I* under the first-to-file bar.  *Carter I,* E.D. Va., Dkt. No. 307.  Plaintiff appealed, and the California Action was dismissed while the appeal was pending.  California Action, Dkt. No. 42.

Upon dismissal of the California Action, Plaintiff quickly refiled his claims in the District Court (*Benjamin Carter v. Halliburton Company, et al.,* E.D. Va., Civ. No. 10-cv-0864, "*Carter II*").  Remarkably, the District Court dismissed *Carter II* under the first-to-file bar on the ground that Plaintiff's appeal of the dismissed *Carter I* action was still pending, despite that the appeal had already been dismissed at the time of the motion to dismiss.  *Carter II,* Dkt. No. 47.  In an attempt to clarify and streamline the litigation, Plaintiff refiled his claims a third time in June 2011 (*Benjamin Carter v. Halliburton Company, et al.,* E.D. Va., Civ. No. 11-cv-0602, "*Carter III*"), which is the operative complaint before this Court.

Defendants filed a motion to dismiss *Carter III*, pointing to two actions filed in 2007 in Maryland and Texas (respectively, the "Maryland Action" and "Texas

5

Action"). *Carter III,* Dkt. No. 11. Notably, both the Maryland and Texas Actions were filed during the investigation and pendency of the California Action and *Carter I*, such that both the Maryland and Texas Actions would have been barred by the first-to-file rule at the time of their filing had the issue been raised. Nonetheless, the District Court held that *Carter III* was barred by the first-to-file rule because the (now-dismissed) Maryland Action was pending at the time *Carter III* was filed, and dismissed *Carter III* with prejudice on statute of limitations grounds. JA62 – 100.

Plaintiff appealed to this Court (No. 12-1011), which reversed the District Court on the first-to-file issue and held that the bar ceases to apply once an earlier-filed, related action is dismissed. No. 12-1011, Dkt. No. 58. Since both the Maryland and Texas Actions had been dismissed by the time this Court issued its opinion, the panel held that Plaintiff had the right to refile his claims a fourth time. *U.S. ex rel. Carter v. Halliburton Co.*, 710 F.3d 171, 183 (4th Cir. 2013). Notably, this Court's holding relied on contemporaneous application of the first-to-file bar, not analysis of whether the bar applied at the time of its initial filing. *Carter III* was thus remanded to the District Court with instructions to dismiss without prejudice so as to permit refiling. *Id.*

Pursuant to the Court's instructions, Plaintiff refiled his claims a fourth time (*Benjamin Carter v. Halliburton Company, et al.*, E.D. Va., Civ. No. 13-cv-1188,

6

"*Carter IV*").  The District Court dismissed *Carter IV* under the first-to-file bar (*Carter IV,* Dkt. No. 31), however, as Defendants had petitioned *Carter III* for certiorari to the Supreme Court in the meantime.

After granting cert and considering the circumstances and allegations of *Carter III*, the Supreme Court affirmed the Fourth Circuit's holding and analysis of the first-to-file issue and remanded *Carter III* back to the Fourth Circuit for proceedings consistent with its opinion.  *Kellogg Brown & Root Servs., Inc. v. U.S., ex rel. Carter*, 135 S. Ct. 1970 (2015) ("*Carter*").  In its opinion, the Supreme Court held that, due to the "remarkable sequence of dismissals and filings" that delayed litigation for nearly a decade, some of Plaintiff's claims were now barred by the FCA's statute of limitations, although it did not reach the issue of whether those claims were equitably tolled.  *Carter*, 135 S. Ct. at 1978.  It also held, however, that those claims which were <u>not</u> barred by the statute of limitations should <u>not</u> be dismissed under the first-to-file rule.  *Id.* at 1979.

On remand, this Court followed the Supreme Court's explicit instruction not to dismiss Plaintiff's "one live claim" under the first-to-file bar, and returned the case to the District Court for further consistent proceedings.  *U.S. ex rel. Carter v. Halliburton Co.*, 612 F. App'x 180 (4th Cir. 2015).  On subsequent remand to the District Court—and despite clear directives from the Supreme Court and the Fourth Circuit <u>not</u> to dismiss Plaintiff's claims under the first-to-file bar—the

District Court granted Defendants' improperly filed motion to dismiss Plaintiff's claims without prejudice under the first-to-file bar. *U.S. ex rel. Carter v. Halliburton Co.*, 144 F. Supp. 3d 869 (E.D. Va. 2015). Plaintiff also cross-moved to amend his complaint (*Carter III,* Dkt. No. 105), noting such an amendment should trigger contemporaneous reassessment of the first-to-file bar pursuant to *Carter* and this Court's holdings. The District Court denied Plaintiff's motion to amend, finding that amendment would be similarly futile under the first-to-file bar. JA169 – 203.

Plaintiff moved for reconsideration (*Carter III,* Dkt. No. 129), noting that the District Court ignored controlling precedent and the law of this case from its authoritative superior courts, as well as intervening guidance from sister courts within the Fourth Circuit and other Circuit Courts of Appeals consistent with *Carter*'s holding. Although the District Court agreed to "clarify" its earlier opinion, it denied Plaintiff's motion for reconsideration on identical grounds; *i.e.*, that Plaintiff's claims were barred under the first-to-file rule because the Maryland Action was pending at the time *Carter III* was filed. JA204 – 226.. The District Court rejected Plaintiff's argument that events subsequent to the initial filing of a complaint—such as the dismissal of the first filed case and/or the filing of an amended complaint—could and should trigger contemporaneous reassessment of the first-to-file bar's application. In concluding its Opinion on the motion for

8

reconsideration that "if the first-to-file bar did not to apply, Relator could amend," the District Court explained "that neither prejudice, the statute of limitations, nor the statute of repose defeat Relator's motion to amend."  On reconsideration the Court held that Plaintiff's motion to amend would be granted if it were not barred by first-to-file and that such amendment would properly relate back to Plaintiff's complaint because the essential facts were contained therein.  *Id.*  Here, Plaintiff appeals the District Court's two erroneous opinions, respectively granting Defendants' motion to dismiss and denying his motion for reconsideration under the first-to-file bar.

Finally, there are three independent facts worthy of note.  First, as the Maryland and Texas Actions were dismissed years ago without reaching their merits, Plaintiff's claims represent the Government's last and only chance to recover the public funds Defendants fraudulently obtained through their reckless, dangerous, and despicable scheme.  Conversely, if Plaintiff's claims are dismissed on procedural grounds, Defendants will have fully escaped liability for defrauding the government of millions of dollars without even having to defend their illegal misconduct.  Second, in the wake of the Supreme Court's decision in *Carter*, the First Circuit and multiple district courts have held that the first-to-file bar must be applied holistically, taking into account the purpose of the False Claims Act and the outcome of any earlier-filed actions.  This trend counsels against mechanical

application of the first-to-file bar, instead militating judicial examination of Congress' intent in passing the False Claims Act and the role of the court system in manifesting that intent. Third, as two sister courts within the Fourth Circuit reached the opposite conclusion as the District Court in this case, this matter is ripe for clarification by this Court of Appeals.

## **SUMMARY OF ARGUMENT**

The District Court's two erroneous opinions, respectively granting Defendants' motion to dismiss and denying Plaintiff's motion for reconsideration under the first-to-file bar, must be reversed in light of (1) controlling Supreme Court precedent amounting to the law of this case, (2) persuasive authority from sister District and Circuit courts, and (3) the salient public policies promulgated by Congress in the False Claims Act generally and the first-to-file bar specifically.

First, by dismissing *Carter III* on first-to-file grounds, the District Court ran directly afoul of the United States Supreme Court's holding and reasoning in *Carter* that Plaintiff had a "live claim" which survived the first-to-file bar regardless of other statutory or procedural limitations. Indeed, the *Carter* Court expressly held that, when interpreting the plain language of the first-to-file bar according to its ordinary meaning, "an earlier suit bars a later suit while the earlier suit remains undecided but <u>ceases to bar</u> that suit once it is dismissed." Applying that principle to the facts of this very case, the High Court concluded that dismissal

of Plaintiff's claims on the ground that *Carter III* was filed during the pendency of the Maryland Action "was error" meriting reversal. The District Court's opposite conclusion, therefore, must be reversed.

Second, the District Court violated the Supreme Court's dictates in *Carter* by only considering whether the first-to-file bar applies at the time a complaint is initially filed, and refusing to reassess the bar's application upon certain subsequent events. Specifically, the *Carter* Court's use of the phrase "ceases to bar" directly indicates that an earlier suit may bar contested claims under the first-to-file rule at one time, but stop barring them by operation of law upon a subsequent event, *i.e.*, the earlier suit's dismissal. Per *Carter*, then, certain events subsequent to the initial filing may necessarily and properly trigger contemporaneous reanalysis of whether the first-to-file bar continues to apply. Here, all earlier-filed suits have been dismissed without consideration of their merits, which *Carter* militates should trigger a contemporaneous reassessment of the bar's application. The District Court's refusal to consider *any* post-filing events in conducting its first-to-file analysis constitutes a second reversible error.

Third, the First Circuit and two district courts within the Fourth Circuit have all held that the application of the first-to-file bar may and should be reassessed upon certain post-filing events by operation of law. In all three cases, the filing of an amended complaint triggered contemporaneous reassessment of the bar's

11

application; none of the courts required dismissal and refiling of the plaintiffs' claims, finding that such a procedure would elevate form over substance in contravention of the FCA. Here, Plaintiff's recent motion to amend his complaint represents a second post-filing event necessitating contemporaneous reanalysis. The District Court's failure to properly consider and apply this persuasive authority is a third reversible error.

Finally, by dismissing *Carter III*, the last remaining claims against Defendants for their defrauding of the Government for millions of dollars and endangering the lives of American troops engaged in an active theater of war, the District Court  mechanically and narrowly applied the first-to-file bar in a manner that, if upheld, will continue to "lead to strange results that Congress is unlikely to have wanted."  Addressing the facts of this case, the Supreme Court noted that it is absurd, unreasonable, and contrary to Congressional intent for a court to dismiss a meritorious False Claims Act complaint because a now wholly non-existent complaint was filed earlier.  Specifically, the *Carter* Court posited, "Why would Congress want the abandonment of an earlier suit to bar a later potentially successful suit that might result in a large recovery for the Government?"

In sum, there is no substantive reason why Plaintiff's complaint cannot proceed in the usual course.  The Government's investigation is long complete and Plaintiff's claims are fully prepared to move forward to trial.  Moreover, Plaintiff

immediately brought the frauds he observed in Iraq to the attention of the proper authorities, and has only ever attempted to comply with the extremely complex procedural orders for the decade this case has wound its way through the federal courts. Plaintiff has been the original source of his claims since his first complaint was filed in January 2006; Plaintiff is therefore a paradigm FCA whistleblower whom Congress identified as vital to the proper functioning of the federal government and the public fisc. Likewise, Plaintiff's claims do not begin to approach the concerns addressed by the first-to-file bar, such as the filing of parasitic or copycat claims by persons improperly seeking to recover as qui tam relators.

In light of the District Court's glaring misinterpretation of *Carter* and its persuasive progeny, as well as its complete disregard for the crucial public policies furthered by proper application of the False Claims Act, the District Court's two erroneous opinions must be reversed and Plaintiff's claims allowed to proceed.

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN GRANTING DEFENDANTS' MOTION TO DISMISS UNDER THE FIRST-TO-FILE BAR

The District Court below erred in dismissing Plaintiff's complaint pursuant to the first-to-file bar. The District Court's ruling directly contravenes (1) the Supreme Court's ruling in this case, which interpreted and analyzed the application

of the first-to-file bar as it applies to Plaintiff's claims; (2) two Fourth Circuit district court decisions, which held that relators can amend their *qui tam* complaint in lieu of dismissal under the first-to-file bar; and (3) the Congressional intent and sound public policies underlying the FCA and the first-to-file bar. The Fourth Circuit reviews *de novo* the grant of a Rule 12(b)(1) and 12(b)6) motion to dismiss for failure to state a claim. *McCorkle v. Bank of Am. Corp.*, 688 F.3d 164, 171 (4th Cir. 2012).

### A.  THE DISTRICT COURT'S DISMISSAL UNDER THE FIRST-TO-FILE BAR FUNDAMENTALLY CONFLICTS WITH THE SUPERME COURT'S HOLDING IN THIS CASE

In 2014, Plaintiff argued before the Supreme Court in regards to the proper application of the FCA's first-to-file bar, and whether the first-to-file bar applied to his specific claims. In its landmark decision, the Supreme Court held that "an earlier suit bars a later suit while the earlier suit remains undecided but ceases to bar that suit once it is dismissed." *Carter*, 135 S. Ct. at 1978. In reaching this decision, the Supreme Court looked to Congress' intent in passing the FCA and asked, in reference to Plaintiff's surviving claims, "Why would Congress want the abandonment of an earlier suit to bar a later potentially successful suit that might result in a large recovery for the Government?" *Id.* at 1979. When the Supreme Court applied this holding to Plaintiff's complaint it found that Plaintiff possessed

"at least one claim timely on remand" which could <u>not</u> be dismissed "under the first-to-file rule." *Id.* at 1978.

### 1. THE SUPREME COURT HELD THAT EARLIER QUI TAM SUITS ARE NO LONGER "PENDING" UPON DISMISSAL

The Supreme Court ruled that "a *qui tam* suit under the FCA ceases to be 'pending' once it is dismissed," a decision which cannot be reconciled with the District Court's holding that actions dismissed long ago still bar Plaintiff's active claims. *Compare Carter*, 135 S. Ct. at 1979 *with U.S. ex rel. Carter v. Halliburton Co.*, 144 F. Supp. 3d at 877. In reaching its opinion, the Supreme Court considered the exact wording of the first-to-file bar. *Carter*, 135 S. Ct. at 1978 ("[No person may] bring a related action based on the facts underlying the *pending* action."). Specifically, the Supreme Court's analysis focused on the term "pending," and whether prior actions, dismissed years ago, continued to bar Plaintiff's claims under the first-to-file rule.

Defendants argued that once an action was filed it would forever be considered "pending," blocking subsequently-filed claims in perpetuity. The Supreme Court rejected this argument wholesale, holding instead that "pending" has the normal meaning of "remaining undecided; awaiting decision….[or] in continuance." *Id.* Therefore, the Court concluded that an "earlier suit bars a later suit while the earlier suit remains undecided but <u>ceases to bar</u> that suit once it is

15

dismissed." *Id.* (emphasis added).  This holding, when considered together with the statutory language of the first-to-file bar, provides that a *qui tam* action is pending only for so long as it remains undecided, if dismissed without reaching the merits no longer bars later-filed actions.

| 31 U.S.C. § 3730(b)(5) | *Carter*, 135 S. Ct. at 1978 |
|---|---|
| "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." | "[A]n earlier suit bars a later suit while the earlier suit remains undecided but ceases to bar that suit once it is dismissed." |

Just as the choice of the term "pending" is crucial to the understanding of the first-to-file bar, so too was the Supreme Court's choice of the word "cease" in *Carter*.  The word "cease" normally means "to stop, forfeit, suspend, or bring to an end.," BLACK'S LAW DICTIONARY 215 (7th ed. 1999), which means that when a prior action is dismissed, it stops, it ends as a bar to later-filed actions.  In other words, a case may be barred for a time while an earlier-filed action is pending, but, without any other action on the part of the later-filed case, "ceases" to be barred upon the dismissal of the earlier-filed action. Courts must therefore analyze the entire chronology of *qui tam* complaint under the first-to-file bar, as it is improper to dismiss a complaint merely because a previous, unsuccessful complaint existed at some point in time.

This distinction is of the utmost importance, as the District Court's interpretation of the Supreme Court's decision runs counter to the actual language used by the Supreme Court. The Supreme Court was well aware that two cases were filed in the interim between Plaintiff's first and third refiling, and that both cases had been dismissed by the time Plaintiff's appeal first reached this Court. *Carter*, 135 S. Ct. at 1974-75. Moreover, attention must be paid to what the Supreme Court omitted; the Supreme Court did not require that relators dismiss and refile their cases in order to pass the first-to-file bar, but opted for a simpler mandate whereby an earlier-filed case "ceases to bar" upon dismissal. *Id.* at 1978.

This is where the District Court first erred. Instead of applying the Supreme Court's decision to Plaintiff as it was written, the District Court chose to ignore the words the Supreme Court actually used in favor of a requirement they never included. The Supreme Court clarified the purpose and the scope of the first-to-file bar, holding that it was not a one-time tollbooth, permitting only the first-filed case while barring all subsequent actions, but instead the bar dissolves (*i.e.*, ceases to exist) if the first-filed case is dismissed without reaching the merits and actions still pending are then allowed to proceed to the merits. *Id.* at 1979.

Furthermore, the Supreme Court's opinion reflects the simplicity of this method, as the Supreme Court did not require relators to dismiss and refile their claims, or even amend them, in order to proceed. The dismissal of the earlier-filed

case without reaching its merits is the one and only requirement. *Id.* In contrast, the District Court held that two actions, which were dismissed years ago without ever reaching their merits, must be considered "pending" for the purposes of the first-to-file bar merely because they were active during a short period of time, during which Plaintiff refiled his complaint. *U.S. ex rel. Carter v. Halliburton Co.*, 144 F. Supp. 3d at 877. The District Court's reasoning cannot be squared with the Supreme Court's decision and must therefore be overturned.

### 2. THE SUPREME COURT HELD THAT CONGRESS WOULD WANT MERITORIOUS WHISTLEBLOWER CLAIMS TO PROCEED

Not only did the District Court err by disregarding the text of the Supreme Court's decision, it erred a second time by frustrating the Congressional intent and public policies underlying the FCA, which the Supreme Court clearly articulated in *Carter*. In enacting and designing the FCA, Congress sought to carefully balance competing interests with the first-to-file bar, encouraging whistleblowers to quickly and efficiently bring forward claims of fraud, while weeding out unmeritorious claims. As this Court recently recognized, the first-to-file bar is one of the FCA's primary instruments to encourage "citizens to act as whistleblowers," but the first-to-file bar also prevents "parasitic lawsuits based on previously disclosed fraud." *U.S. ex rel. Carter v. Halliburton Co.*, 710 F.3d at 181.

Indeed, the first-to-file bar "reflects Congress' explicit policy choice to encourage prompt filing and, in turn, prompt[s] recovery of defrauded funds by the United States." *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 313 n.11 (2010); *see also U.S. ex rel. Beauchamp v. Academi Training Ctr.*, 816 F.3d 37, 39 (4th Cir. 2016) ("[W]e start with the relevant statutory framework. Enacted during the Civil War to prevent fraud by military contractors, the FCA imposes civil liability on persons who knowingly submit false claims for goods and services to the United States."). Often lost in the scuffle between relators and defendants, however, is the fact that the primary beneficiary of a *qui tam* action, and the False Claims Act itself, is the federal government. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) ("The False Claims Act allows private litigants to bring actions on behalf of the government.").

This issue is at is the heart of this matter. When interpreting a federal statute, courts must take Congressional intent into account. *De Osorio v. U.S. I.N.S.*, 10 F.3d 1034, 1043 (4th Cir. 1993) ("[T]he most important guiding factor in conducting statutory interpretation is congressional intent."). The Supreme Court directly addressed this question in this case, asking

> "Why would Congress want the abandonment of an earlier suit to bar a later potentially successful suit that might result in a large recovery for the Government?"

*Carter*, 135 S. Ct. at 1979. This is a question that Defendants cannot and will not answer, because Congress clearly did not intend for the first-to-file rule to bar valid complaints merely because an unmeritorious, dismissed suit was filed earlier. Such an interpretation would pervert the true purpose of the FCA, as defendants could use meritless *qui tam* actions to shield themselves from liability, and the federal government would lose access to a vital avenue for recovering fraudulently-obtained monies.

Plaintiff does not dispute that the operative complaint was filed before the Maryland and Texas Actions were dismissed. However, both the Maryland and Texas Actions were dismissed without any substantive litigation, leaving Plaintiff with the only remaining, active claims against Defendants. If Plaintiff is procedurally dismissed under the first-to-file bar, then Defendants will succeed in avoiding liability for their fraudulent scheme—which endangered US troops stationed overseas—and the federal government will be denied the potential fruits of a "successful suit that might result in a large recovery." *Id.*

Congress did not intend for the first-to-file bar to operate in such a manner, a fact that the Supreme Court clearly emphasized. Nevertheless, in granting Defendants' motion to dismiss, the District Court completely ignored the policy concerns which motivated the enactment of the FCA, and chose instead to protect Defendants from valid claims on procedural grounds. Plaintiff's action is

representative of the meritorious whistleblowers Congress intended the FCA to encourage, not the "parasitic lawsuits based on previously disclosed fraud" the first-to-file bar is meant to deny. *U.S. ex rel. Carter v. Halliburton Co.*, 710 F.3d at 181. Therefore, under the Supreme Court's interpretation of Congress' intent, the District Court's dismissal of Plaintiff under the first-to-file bar was a clear and reversible error.

### 3. THE SUPREME COURT HELD THAT PLAINTIFF HAD AT LEAST ONE LIVE CLAIM IN THE CONTEXT OF THE FIRST-TO-FILE BAR

The District Court misinterpreted the Supreme Court's decision a third time when it concluded that Plaintiff's claims could be dismissed without prejudice, whereas the Supreme Court ruled that Plaintiff possessed at least one valid claim. Although the Supreme Court found that a significant portion of Plaintiff's claims were barred due to the statute of limitations, Defendants and the Supreme Court acknowledged that Plaintiff "has raised other arguments that, if successful, could render at least one claim timely on remand." *Carter*, 135 S. Ct. at 1978.

In reaching this conclusion, the Supreme Court was fully aware that the Maryland and Texas Actions were pending at the time Plaintiff filed the operative complaint, but did not find this event significant, much less dispositive of the legal issues. Rather, the Supreme Court looked to whether the Maryland and Texas were still pending at the present time, and held that they were not. *Id.* The Supreme

21

Court then remanded Plaintiff's case for further proceedings, with which this Court concurred. *U.S. ex rel. Carter v. Halliburton Co.*, 612 F. App'x at 181 (holding that dismissal of Plaintiff's "'one live claim' was 'not called for' under the first-to-file rule.") (quoting *Carter,* 135 S. Ct. at 1978).

By finding that Plaintiff possessed a "live" claim, the Supreme Court was signaling to the lower courts that Plaintiff's remaining claims should be allowed to proceed uninterrupted. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 124 (1983) (holding that a plaintiff with a "live claim" for damages had standing to pursue his claims); *see also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016), *as revised* (Feb. 9, 2016) (holding that a class representative with a "live claim" must be allowed to show that certification is warranted). After all, if Plaintiff's claims were not "live" they would necessarily be "dead," and then the Supreme Court would have simply dismissed them. Again, the District Court failed to pay proper attention to the Supreme Court's opinion, willfully ignoring the significance of the Supreme Court's ruling that Plaintiff's claims remained "live" and "timely on remand." For this third reason, the District Court's misreading of *Carter* amounted to reversible error.

**B.**     **THIS COURT SHOULD ADOPT THE SOUND REASONING OF ITS TWO SISTER DISTRICT COURTS WHICH HAVE HELD THAT POST-FILING EVENTS PROPERLY TRIGGER REASSESSMENT OF THE FIRST-TO-FILE BAR BY OPERATION OF LAW SUCH THAT RELATORS NEED NOT REFILE THEIR CLAIMS FOLLOWING THE DISMISSAL OF AN EARLIER FILED ACTION**

The District Court erred by restricting its analysis of the first-to-file bar to the date when Plaintiff's operative complaint was first filed, regardless of later developments. Although the District Court's misinterpretation and misapplication of the Supreme Court's decision provides sufficient grounds for reversal, the District Court failed to properly consider or apply the rulings from two recent decisions of its sister courts, which held that a *qui tam* complaint can proceed without refiling following the dismissal of an earlier-filed action. *See U.S. ex rel. Palmieri v. Alpharma, Inc.*, 928 F. Supp. 2d 840 (D. Md. 2013) ("*Palmieri*"); *Kurnik v. PharMerica Corp.*, No. 3:11-CV-01464-JFA, 2015 WL 1524402 (D.S.C. Apr. 2, 2015) ("*Kurnik*").

When faced with a similar situation, two district courts within the Fourth Circuit held that key events, such as a motion to amend, require a reanalysis of the first-to-file bar. Most impressively, these decisions were reached prior to the Supreme Court's ruling in this action, and the Supreme Court's decision only provides greater reinforcement of their holdings. The District Court thereby erred when it failed to properly utilize persuasive authority from its sister courts, creating

23

an intra-circuit split, and by wrongly concluding that an analysis under the first-to-file bar cannot look past the initial filing date.[1]

1. **AMENDING A COMPLAINT ALLOWS COURTS TO CONTEMPORANEOUSLY REASSESS THE FIRST-FILE-BAR'S APPLICATION**

The United States District Court of the District of Maryland has held that subsequent events, such as the filing of an amended complaint, trigger and require reassessment of whether the first-to-file bar applies. *Palmieri*, 928 F. Supp. 2d at 851. The *Palmieri* Court faced a substantially similar situation to the one before this Court, where an earlier-filed *qui tam* action was dismissed while relator Palmieri's later-filed claims were still pending. *Id.* at 849. The defendants in

---

[1] This Court may also wish to reconsider its previous assumptions that the first-to-file bar is jurisdictional in light of recent guidance from the Supreme Court. Congress specifically did not make the first-to-file bar a jurisdictional bar, and courts should not find a jurisdictional bar in the absence of such language. Shortly after Wong was decided, the DC Circuit Court reconsidered its positon that the first-to-file bar was jurisdictional and ruled that it was not jurisdictional *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1627 (2015) ("[T]his Court will not conclude that a time bar is jurisdictional unless Congress provides a 'clear statement' to that effect. And in applying that clear statement rule, this Court has said that most time bars, even if mandatory and emphatic, are nonjurisdictional. Congress thus must do something special to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it.") (citations omitted); *U.S. ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112, 120-21 (D.C. Cir. 2015), *cert. denied sub nom. AT&T, Inc. v. U.S. ex rel. Heath*, No. 15-363, 2016 WL 3461577 ( June 27, 2016) ("Congress, in other words, knew how to reference jurisdiction expressly in the False Claims Act if that was its purpose. But it did not do so in the first-to-file rule. Because nothing in the text or structure of the first-to-file rule suggests, let alone clearly states, that the bar is jurisdictional, we hold that the first-to-file rule bears only on whether a *qui tam* plaintiff has properly stated a claim.") (citations and quotations marks omitted).

*Palmieri* argued that, under the first-to-file bar, courts must only consider the facts and circumstances surrounding a *qui tam* action as they existed at the date the contested complaint was originally filed. *Id.* at 850. The *Palmieri* Court rejected defendant's approach, holding that such an illogical analysis would "elevate form over substance," contrary to the terms and the purpose of the FCA. *Id.* at 851-52.

Instead, the *Palmieri* Court traced the origins and the intent behind the first-to-file bar, noting that Congress incentivized "relators with valuable information to file—and file quickly." *Id.* at 847 (quoting *In re Nat. Gas Royalties Qui Tam Litig,* 566 F.3d 956, 961 (10th Cir. 2009)). However, the first-to-file bar also discourages delinquent parties from tacking on additional factual allegations or piggybacking off already successful claims. *Palmieri*, 928 F. Supp. 2d at 847 (citing *Grynberg v. Koch Gateway Pipeline Co.,* 390 F.3d 1276, 1279 (10th Cir. 2004); *In re Nat. Gas Royalties,* 566 F.3d at 961). Furthermore, the first-to-file bar protects defendants who might otherwise be forced to defend repetitive *qui tam* claims based upon the same fraud. *Palmieri*, 928 F. Supp. 2d at 847 (citing *United States ex rel. Precision Co. v. Koch Indus., Inc.,* 31 F.3d 1015, 1018 (10th Cir. 1994)).

Like the case at bar, relator Palmieri quickly and diligently filed his complaint, missing out on first-filed status by just four days. *Palmieri*, 928 F. Supp. 2d at 849. Similarly, the earlier-filed case was entirely unsuccessful, leaving

no pending claims onto which Palmieri could "piggyback." *Id.* Likewise, the defendants in *Palmieri* had never settled the relevant claims, so there was no danger of a double recovery.

In reaching its decision, the *Palmieri* Court analyzed recent decisions from the Supreme Court, as well as the Seventh, D.C., and Tenth Circuits, and held that once the first-filed complaint is dismissed it is no longer pending, and a later-filed complaint must be allowed to proceed normally. *Id.* at 850-51. Digging deeper, the *Palmieri* Court determined that in an analogous situation, the Supreme Court had found that the amendment of a *qui tam* complaint under the FCA is a key event, and that the date of the amended complaint—not the original complaint— serves to determine whether the complaint can proceed. *Id.* (citing *Rockwell International Corp. v. United States,* 549 U.S. 457 (2007)).

Ultimately, the *Palmieri* Court determined that

> "If the Court were to dismiss the Amended Complaint, it would do so without prejudice, and the first-to-file rule would not preclude Mr. Palmieri from filing an identical pleading under a new case number tomorrow."

*Palmieri,* 928 F. Supp. 2d at 851. Rather than engage in such an absurd procedural exercise which served absolutely no purpose whatsoever, however, the *Palmieri* Court took the next, logical step, holding that

> "It would elevate form over substance to dismiss the Amended Complaint on first-to-file grounds at this juncture. Accordingly, I

26

conclude that the first-to-file rule does not bar Mr. Palmieri's Amended Complaint."

*Id.* at 851-52 (emphasis added); *cf. United States ex rel. Shea v. Verizon Commc'ns, Inc.*, No. CV 09-1050(GK), 2015 WL 7769624, at *10 (D.D.C. Oct. 6, 2015) (holding in a non-binding district court case that later-filed claims must be dismissed if an earlier-filed claim was pending at the time).

Plaintiff presents a nearly-identical situation to the one before the *Palmieri* Court. Plaintiff quickly and diligently filed his complaint upon returning from Iraq. Next, as in *Palmieri*, the earlier-filed Maryland and Texas Actions were entirely unsuccessful, such that Plaintiff is not and could not be "piggybacking" on their claims. Third and finally, due to the failure of the previous actions, there are no concerns that Defendants would be subjected to double liability.

Indeed, Plaintiff provides an even stronger case, as his claims were originally filed in 2006, years before the Maryland and Texas Actions were ever filed. As was the case in *Palmieri*, it is absurd and contrary to the language and spirit of the FCA to allow an unmeritorious, earlier-filed action that was dismissed to bar a meritorious, later-filed action.

Significantly, Plaintiff moved to amend his complaint, which according to the *Palmieri* Court creates a event necessitating contemporaneous reanalysis of the first-to-file bar. Therefore, *Palmieri* and Plaintiff's claims are consistent with the Supreme Court's holding, and Plaintiff's claims must be allowed to proceed

27

without refiling. The District Court erred by "elevat[ing] form over substance" when it dismissed Plaintiff's complaint without prejudice, knowing that refiling would likely face substantial challenges under the statute of limitations. Procedure must serve the courts; courts are not chained to follow procedures when it would result in bizarre, unnecessary practices or absurd results. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) (holding that if "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters…the intention of the drafters, rather than the strict language, controls.") (citations and quotation marks omitted). Plaintiff has provided this Court with claims that are no longer barred under the first-to-file rule and Plaintiff has moved to amend his complaint. Therefore, this Court must reassess whether the first-to-file bar still applies to Plaintiff's claims as they stand today and allow him to proceed uninterrupted.

## 2. THE DISTRICT COURT'S DECISION CONFLICTS WITH TWO SISTER COURTS AND THE FCA'S POLICY

The District Court's refusal to reassess the application of the first-to-file bar following Plaintiff's motion to amend was error, as it places the District of Virginia in conflicts with the District of South Carolina as well. Facing a substantially similar situation, the *Kurnik* Court adopted *Palmieri's* reasoning concerning the application of the first-to-file bar. *Kurnik*, No. 3:11-CV-01464-

JFA, 2015 WL 1524402, at *2 (D.S.C. Apr. 2, 2015).  Again, the defendant in *Kurnik* argued that under the first-to-file bar courts must ignore all subsequent events and can only consider the date and content of the original pleadings.  *Id.,* 2015 WL 1524402, at *4.

Instead, the court in *Kurnik* turned to the "<u>extremely persuasive</u>…FCA first-to-file analysis of our sister court in Maryland," and incorporated *Palmieri*'s careful analysis of the first-to-file bar and various Circuit Courts into its decision. *Id.* (citing *Palmieri*, 928 F. Supp. 2d 840) (emphasis added).  *Kurnik* and *Palmieri* rested on three central facts: first, the earlier-filed action had already been dismissed by the time the later-filed case was heard; second, a key event, such as the filing of an amended complaint had occurred in the interim; and third, this decision was consistent with "the policy behind the FCA because it does not threaten Defendants with double recovery."  *Kurnik*, No. 3:11-CV-01464-JFA, 2015 WL 1524402, at *6.

All of these elements are equally applicable to Plaintiff's claims, and the fact that two courts within the Fourth Circuit have already found in favor of similar actions weighs strongly in Plaintiff's favor. *Kurnik* ruled that live complaints must not be dismissed and refiled because of a previously-pending complaint. *Id.*, 2015 WL 1524402, at *7.  This holding maintains consistency within the Fourth Circuit, and it was error for the District Court not to adopt *Palmieri* and *Kurnik* given the

many similarities between these three cases, as well as the uncertainty created through an intra-circuit split.

## II.   THE DISTRICT COURT ERRED BY FAILING TO GRANT PLAINTIFF'S MOTION FOR RECONSIDERATION

Following the erroneous dismissal of Plaintiff's complaint, Plaintiff filed a motion for reconsideration on two primary grounds. First, the First Circuit had decided *Gadbois*, which interpreted Carter in the manner suggested by Plaintiff in this case, and Plaintiff believed that the sound reasoning contained in *Gadbois* provided additional grounds for the District Court to reconsider its earlier decision. Second, the District Court declined to decide Plaintiff's motion to amend on other than first-to-file grounds. Plaintiff believed that a fully record of the District Court's position on the motion to amend was necessary because, in the absence of a complete record, further delays might accrue. In response to Plaintiff's motion for reconsideration, the District Court appeared to agree that Plaintiff's motion to amend should be decided on other than first-to-file grounds for completeness of the record. In its reconsideration opinion, the District Court held that Plaintiff had filed a meritorious motion to amend, which added claims pertaining to Defendants' submission of false claims in order to obtain bonuses for purifying water in Iraq, which fell within the statute of limitations. The District Court also found that these claims properly related back to the original filing of *Carter III* because the facts supporting those claims, i.e. the submission to the government requesting the

30

payment of bonuses had been alleged in the original complaint and that Defendants were on notice that Plaintiff was seeking these damages. The consequence of this ruling is that if the Court were to reverse the District Court's decision on first-to-file grounds, the case would proceed on the amended complaint, presumably to trial. However, as previously noted, the District Court denied Plaintiff's motion to reconsider its first-to-file decision despite the compelling *Gadbois* decision, necessitating this appeal. "When a motion for reconsideration is appealed, the standard of review is abuse of discretion." *United States v. Holland*, 214 F.3d 523, 527 (4th Cir. 2000) (citing *Browder v. Department of Corrections*, 434 U.S. 257, 263 n.7 (1978)).

### A.   THE DISTRICT COURT COMPOUNDED ITS EARLIER ERRORS BY IGNORING PERSUASIVE AUTHORITY FROM THE FIRST CIRCUIT

The First Circuit held that the Supreme Court's decision in this case, coupled with its interpretation of the first-to-file bar, requires courts to reassess the application of the first-to-file bar upon certain events occurring after the initial filing date. In reaching this decision, the First Circuit faced another situation nearly-identical to the one now before this Court. In 2014, a whistleblower filed an amended complaint under the FCA, but the district court dismissed the complaint under the first-to-file bar, concluding that the amended complaint was substantially-similar to a pending, first-filed FCA action. *U.S. ex rel. Gadbois v.*

31

*PharMerica Corp.*, 809 F.3d 1, 3 (1st Cir. 2015), *cert. denied,* No. 15-1309, 2016 WL 1643545 (U.S. June 27, 2016) ("*Gadbois*") (citing *United States ex rel. Gadbois v. PharMerica Corp.,* No. 10–471, slip op. at 22–23 (D.R.I. Oct. 3, 2014) (unpublished)).  The whistleblower in *Gadbois* timely appealed the dismissal to the First Circuit, but while the case was still being briefed, the First Circuit recognized that two major changes had occurred:  "First, the Supreme Court handed down its decision in *Kellogg Brown & Root Services, Inc. v. United States ex rel. Carter*…[and second,] the [pending, first-filed FCA] action was settled and dismissed." *Gadbois*, 809 F.3d at 3-4 (citations omitted).

The First Circuit's analysis was complicated by the same issue before this Court. In *Gadbois*, the first-filed action <u>was</u> pending when the whistleblower filed their action, and the first-filed action <u>was still pending</u> when the whistleblower amended their complaint.  *Id.* at 3.  However, while *Gadbois* was being briefed for appeal, the earlier-filed action was dismissed without ever reaching its merits, leaving *Gadbois* as the only remaining case.  *Id.* at 4.  Following this development, the whistleblower in *Gadbois* requested that the First Circuit: "deem his complaint supplemented with the additional fact that the [first-filed] action was no longer pending." *Id.*  In response, the defendants claimed that the First Circuit was bound to reassess the application of the first-to-file bar once and only once, when the

complaint was originally filed, and that subsequent events could not be taken into account. *Id.*

The First Circuit resolved the issue of how a then-pending and later-dismissed earlier-filed complaint impacts a later-filed, yet still active, complaint through the careful examination of the first-to-file bar. Based solely upon the Supreme Court's decision in *Carter* and the dismissal of the first-filed action while *Gadbois* was pending, the First Circuit ruled that the first-to-file bar had been "dissolved," because:

> Although the order of dismissal may have been proper at the time it was entered, the relator timely appealed and the critical developments occurred during the pendency of that appeal. Consequently, this case is analogous to the cases in which a jurisdictional prerequisite (such as an exhaustion requirement) is satisfied only after suit is commenced. Under the circumstances, it would be a pointless formality to let the dismissal of the second amended complaint stand—and doing so would needlessly expose the relator to the vagaries of filing a new action.

*Id.* at 6 (emphasis added). Moreover, in reaching this conclusion the First Circuit held that "the time-of-filing rule is inapposite to the federal question context," holding  that the first-to-file bar is:

> "[N]ot determined by the facts existing at the time of filing an original complaint."

*Id.* at 5; *cf. United States v. Unisys Corp.*, No. 1:14-CV-1217, 2016 WL 1367163, at *8 (E.D. Va. Apr. 5, 2016) (holding that *Gadbois* does not control).

33

The Supreme Court's denial of certiorari is particularly significant. First, the Supreme Court has recently granted certiorari in multiple FCA cases, including the matter at bar, where it believed that clarification of the FCA's provisions was necessary. Second, the question that the *Gadbois* defendants attempted to certify to the Supreme Court is essentially the same legal position taken by Defendants here and incorrectly adopted by the District Court, *i.e.* that it would be improper to allow a case which remains pending to continue merely because a previously-filed case had been dismissed. Nonetheless, the High Court allowed the First Circuit's interpretation in *Carter*, the same position that Plaintiff asserts here, to stand.

Plaintiff respectfully requests that this Court adopt the sound reasoning of the First Circuit. Moreover, *Gadbois* ruling that the application of the first-to-file bar may be reassessed on appeal essentially embraces Plaintiff's interpretation of *Carter*, that a substantive post-filing event, such as a motion to amend, is not required to allow for a reassessment of the application of the first-to-file rule and formerly-barred actions must be allowed to proceed. Plaintiff, like *Gadbois*, filed his complaint while an earlier-filed complaint was pending. Plaintiff, like *Gadbois*, has diligently pursued his complaint, whereas both sets of earlier-filed actions were dismissed without ever reaching their merits. At this point, Plaintiff is the one and only whistleblower who has managed to maintain his valid claims against Defendants, and dismissal of his complaint would prevent the federal government

from ever recovering for Defendants' fraud. Taken together, the Supreme Court and the First Circuit have provided a common-sense approach to the first-to-file bar which adheres to the letter and the spirit of the law.

Moreover, there is one crucial difference between *Gadbois* and Plaintiff. Plaintiff's case is far more compelling for policy reasons. In *Gadbois*, the First Circuit held that the whistleblower did not need to refile his complaint, even though "it would be a pointless formality." *Gadbois*, 809 F.3d at 6. The First Circuit reasoned that any potential issues concerning refiling were dangerous enough to necessitate against forcing whistleblowers to refile, especially when weighed against the absolute lack of benefits for enforcing such a requirement. *Id*. In contrast, forcing Plaintiff to refile would be far worse than a "pointless formality," it would potentially terminate Plaintiff's valid claims. Due primarily to Defendants procedural chicanery, Plaintiff's claims could implicate the FCA's statute of limitations, and forcing Plaintiff to refile would encourage and reward defendants for running out the clock by chasing procedural loopholes.

## B. **OTHER DISTRICT COURTS HAVE ENDORSED THE FOURTH CIRCUIT AND THE FIRST CIRCUIT'S APPLICATION OF THE FIRST-TO-FILE BAR**

As *Palmieri* and *Kurnik* were decided in 2013 and 2015, respectfully, they were resolved without the Supreme Court's guidance in *Carter*. They independently reached the conclusion "that the first-to-file bar did not mandate

35

dismissal of a second-filed suit once the first suit ceased to be pending." *United States v. Cephalon, Inc.*, No. CV 08-287, 2016 WL 398014, at *4 (E.D. Pa. Feb. 2, 2016) ("*Cephalon*") (citing *Kurnik*, No. 3:11–CV–01464, 2015 WL 1524402, at *6); *Palmieri*, 928 F. Supp. 2d at 840, 852). However, following the Supreme Court's ruling, the "Court's approach in *Kurnik* is bolstered by the reasoning in *Carter* that Congress would not want an abandoned first suit to bar a potentially successful recovery for the government in a second suit." *Cephalon,* No. CV 08-287, 2016 WL 398014, at *4.

The Supreme Court's opinion in *Carter* has served to echo and amplify the *Palmieri* and *Kurnik* decisions, and the First Circuit has lead the charge to clarify the use of the first-to-file bar, so that it does not lead to "pointless formalit[ies]…[which] needlessly expose the relator to the vagaries of filing a new action." *Id.* (quoting *Gadbois*, 809 F.3d at 6).

The Eastern District of Pennsylvania faced a nearly-identical situation, whereby a later-filed *qui tam* complaint was challenged under the first-to-file bar because a since-dismissed case was pending at the time of filing. *Cephalon,* No. CV 08-287, 2016 WL 398014, at *1. The *Cephalon* Court stayed its ruling until the decision in Carter, after which it concurred with the aforementioned cases, holding that a later-filed could proceed without refiling in such an instance. Put simply, "it would be unjust to require relators to refile their claims" following the

36

dismissal of the first-filed complaint, as allowing the "claims to continue without dismissal and refiling is the proper, fair and efficient procedural route." *Id.*

## III.   THE DISTRICT COURT'S DISMISSAL ON FIRST-TO-FILE GROUNDS AND REQUIREMENT THAT PLAINTIFF REFILE HIS COMPLAINT A FIFTH TIME VIOLATE SOUND PUBLIC POLICY AND PRESENT UNNECESSARY PROCEDURAL HURDLES.

After misinterpreting the Supreme Court's ruling in this case, misapplying the FCA so as to dismiss Plaintiff under the first-to-file bar, and failing to correct these mistakes following Plaintiff's motion for reconsideration, the District Court committed further reversible error by concluding that Plaintiff must refile his complaint a fifth time in order to proceed with his claims. The District Court's decision was not just impractical, but incorrect, as requiring Plaintiff to refile his claims will result in unnecessary filings entirely contrary to the purpose of the FCA statute. Moreover, Plaintiff presents compelling policy justification for waiving a duplicative and unnecessary refiling, as any refiling would almost certainly implicate the FCA's statute of limitations.

### A.   REQUIRING PLAINTIFF TO REFILE HIS COMPLAINT WOULD REQUIRE UNNECESSARY STEPS, INCLUDING THE RESEALING OF THE COMPLAINT AND A NEW GOVERNMENT INVESTIGATION

The District Court erred by dismissing Plaintiff's complaint and requiring him to refile his claims a fifth time, demonstrating its failure to fully comprehend the procedures and policy goals underpinning the lengthy and complex

requirements necessary to refile an FCA complaint. The FCA is a highly complex federal statute whereby the promise of justice and monetary reward encourages private citizens to root out and report fraud on the Government, while also protecting defendants from unmeritorious or parasitic claimants. The taxpayers and the federal government, however, are the primary beneficiaries of the FCA, a Congressional policy decision clearly reflected throughout the language, construction, and implementation of the statute. *U.S. ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 403-04 (4th Cir. 2013) ("[T]he chief purpose of the FCA to ensure that the government would be made completely whole.") (citations and quotation marks omitted).

For example, under 31 U.S.C. § 3730(b), a qui tam complaint must be filed and served under seal, where it remains for at least 60 days so the Government may investigate the allegations within the complaint and, if they so desire, intervene and pursue the action themselves. Should the Government fail to reach a decision within those 60 days, it may then extend the seal period, a process which can continue for months or, more often, years. Thus, a whistleblower is forced to wait no less than two months, and likely far longer, in order for the Government to weigh the strength of their claims and determine whether they wish to take command entirely.

38

Should Plaintiff refile his complaint, he will be forced to jump through these same hoops all over again, an unnecessary step made even more absurd by the fact that he has done so four times previously.  After filing his fifth complaint under seal, despite the fact that its contents have been public for nearly a decade, Plaintiff would have to wait for at least two months, and likely much longer, while the Government once again decides whether or not to intervene in a case first filed in 2006, and in which they have previously declined.  Afterwards Plaintiff would be allowed to unseal his complaint, only to presumably defend against Defendants' inevitable motion to dismiss, which would certainly involve new, stronger challenges under the statute of limitations.

The District Court erred by failing to comprehend the lengths and difficulties Plaintiff would have to go through in order to properly refile his complaint, or else the District Court erred by finding in favor of these repetitive, unnecessary steps despite  the complete absence of any benefits to the Government or prejudice to Defendants.  Again, Congress designed the FCA to serve the interests of the Government first and foremost, which is why qui tam cases are placed under seal during the Government's investigation, and why the Government is solely responsible for deciding whether or not to intervene in a case, or even if a qui tam complaint may be dismissed.  Even if Plaintiff were to survive all of the aforementioned hurdles and obtain a judgment against Defendants, the

Government will still collect the lion's share of any award, which leads back to the Supreme Court's question, "Why would Congress want the abandonment of an earlier suit to bar a later potentially successful suit that might result in a large recovery for the Government?" *Carter*, 135 S. Ct. at 1979. The District Court's wrongfully-imposed requirement that Plaintiff refile his complaint only serves to frustrate Congress' clear intention not to require whistleblowers to refile their cases.

### B.    PLAINTIFF'S CASE PRESENTS MORE PRESSING POLICY CONCERNS THAN SIMILAR ACTIONS BECAUSE A REFILING WOULD POTENTIALLY BE BARRED UNDER THE STATUTE OF LIMITATIONS

The District Court's decision that refiling was the only resolution constituted reversible error. Plaintiff does not raise these concerns as a theoretical danger— Plaintiff has already witnessed Defendants escape liability for the vast majority of their fraudulent claims by fighting and appealing procedural issues for over a decade. If the District Court is not overturned, then it is more than likely that Defendants will never face a trial for submitting false claims and endangering American soldiers in an active war zone.

This is major difference between Plaintiff and the relators in *Gadbois*, *Palmieri*, *Kurnik*, and *Cephalon* discussed *supra* Parts I.B and II. Whereas those relators' clams still fell within the statute of limitations, making refiling an unattractive possibility, Defendants' constant appeals and motions have nearly run

out the clock on Plaintiff's claims. Moreover, the courts in *Gadbois*, *Palmieri*, *Kurnik*, and *Cephalon* found that the mere *possibility* that plaintiffs might run into unforeseen issues upon refiling was dangerous enough to militate against a pointless, judicially-wasteful refiling. *Gadbois*, 809 F.3d at 6; *Palmieri*, 928 F. Supp. 2d at 851-52; *Kurnik*, No. 3:11-CV-01464-JFA, 2015 WL 1524402, at *6; *Cephalon,* No. CV 08-287, 2016 WL 398014, at *4. In contrast, Plaintiff's concerns over refiling are very real and very dangerous—the District Court even acknowledged that, "[i]n the present case . . . dismissal and refiling could implicate significant statute of limitations and repose problems." *United States ex rel. Carter v. Halliburton Co*., No. 111-cv-602, 2016 WL 634656, at *2 (E.D. Va. Feb. 17, 2016).

To be clear, the purpose of the FCA's filing procedures, statute of limitations, and the first-to-file bar is <u>not</u> to allow defendants to escape liability by running out the clock. Courts must interpret and apply the FCA in a manner which comports with the statute itself, Congressional intent, and common-sense. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (finding that Congress has repeatedly "sought to broaden the availability of the False Claims Act to 'enhance the Government's ability to recover losses sustained as a result of fraud against the Government'… in response to judicial decisions taking a restrictive approach to the False Claims Act."). As Plaintiff was diligent

41

in reporting Defendants' fraud and filing his qui tam action, it makes no sense to punish him by forcing an unnecessary refiling with the possibility that he might lose the rest of his still-valid claims to the statute of limitations. The District Court erred in demanding that Plaintiff refile because of the draconian effects it would have on Plaintiff's claims, which represent the last chance for the Government, the taxpayers, and U.S. troops subjected to months of unclean water to achieve justice.

## CONCLUSION

For the reasons set forth above, Plaintiff-Appellant Benjamin Carter respectfully requests that this Court reverse the District Court's decisions dismissing his claims under the False Claims Act.

Dated:  July 8, 2016

Respectfully submitted,

STONE & MAGNANINI LLP

By:   s/ David S. Stone
     David S. Stone
     Robert A. Magnanini
100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922
Tel:   (973) 218-1111
Fax:  (973) 218-1106
dstone@stonemagnalaw.com
rmagnanini@stonemagnalaw.com

*Attorneys for Plaintiff-Appellant-Relator*

## <u>CERTIFICATE OF COMPLIANCE</u>

The Opening Brief of Plaintiff-Appellant-Relator complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 9,732 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

The Opening Brief of Plaintiff-Appellant-Relator complies with the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point font, Times New Roman

It is so Certified this 8th day of July, 2016:


<u>s/ David S. Stone</u>
David S. Stone

43

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 8th day of July, 2016, Plaintiff-Appellant-Relator Benjamin Carter's Opening Brief was electronically filed with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users. Counsel who are not so registered were served two (2) copies by first-class U.S. mail, postage prepaid.

### *<u>VIA CM/ECF:</u>*

John P. Elwood
Tirzah S. Lollar, Esq.
Craig D. Margolis
Jeremy C. Marwell
Vinson & Elkins LLP
200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037

### *<u>VIA FIRST-CLASS MAIL:</u>*

Richard W. Sponseller
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314

It is so Certified this 8th day of July, 2016:

<u>s/ David S. Stone</u>
David S. Stone